*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

MYERS ENTERPRISES, LLC,

                Plaintiff,

    v.

DAWAH PHARMACEUTICALS, INC.,

                Defendant.
_____

Civil Action No. 19-8958 (FLW) (LHG)

OPINION

**WOLFSON, Chief Judge:**

Before the Court is a motion to dismiss filed by Dawah Pharmaceuticals, Inc. ("Defendant" or "Dawah"), seeking dismissal of Plaintiff Myers Enterprises, LLC's ("Plaintiff") Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff brought suit against Defendant for breach of contract and unjust enrichment, alleging that the parties had entered into a contract in which Plaintiff agreed to provide certain sourcing and procurement services for Defendant in connection with the construction of a pharmaceutical manufacturing facility. Defendant moves to dismiss, arguing that, because it is not a New Jersey company and that the facts relevant to the alleged breach of contract occurred in New York, this Court lacks personal jurisdiction over it.

For the following reasons, the Court finds that it has personal jurisdiction over Defendant, and, therefore, Defendant's motion to dismiss is denied.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the present matter, Plaintiff, a New Jersey limited liability company, alleges that, on January 11, 2018, it entered into a contract with Defendant, a Delaware corporation principally

1

located in New York, in which Plaintiff agreed to perform strategic sourcing and procurement services related to Defendant's planned construction of a pharmaceutical manufacturing facility in New York. Compl. ¶ 1. Plaintiff alleges that it performed all of these services from its New Jersey office in accordance with the contract, Wray Cert. ¶ 10, but that Defendant failed to make timely payments for the services provided. Compl. ¶¶ 4-5.

With respect to the present personal jurisdiction motion, both sides submitted declarations supporting their respective positions. According to Nicholas Vartanian ("Vartanian"), one of Dawah's founders and directors, Dawah "is strictly an entity that exists solely in the ether" as it "was exclusively formed for the purposes of research, development and sale of various medications and is still in the infant stages of its business." Vartanian Aff. ¶ 4. Vartanian maintains that Dawah has no presence in New Jersey, and has never sold any product, signed any documents, conducted negotiations, advertised, or maintained a sales website within the state. *Id.* ¶ 5. Indeed, Defendant signed and executed the subject contract in New York. *Id.* ¶ 7.

In a certification from W. Wray Myers III ("Myers"), Plaintiff's principal and sole member, Myers maintains that Defendant had extensive contract-related contacts with New Jersey. To that end, Plaintiff claims that Defendant directed numerous telephone and email communications regarding the contract towards New Jersey, and one of Defendant's employees, Stephen Lawandy, lived in New Jersey and frequently called Plaintiff from his home to discuss the contract. Wray Cert. ¶¶ 7-8. Moreover, Myers attests that other Dawah employees visited New Jersey on two separate occasions to attend meetings related to the performance of the contract. First, after Plaintiff negotiated an agreement with a contractor to prepare a feasibility study and geotechnical survey for Dawah's new manufacturing facility, Matthew Cherian, a

Dawah executive and co-founder, travelled to Burlington, New Jersey to meet with the third party, and Myers participated in that meeting telephonically. *Id.* ¶ 14. Second, several Dawah executives travelled to East Windsor/Hightsown, New Jersey for a face-to-face meeting with Myers to discuss the details of the parties' contractual relationship moving forward. *Id.* ¶ 15. Importantly, Defendant does not deny that these meetings occurred, but rather, maintains that the second meeting was "only for the purpose of a status update and to explore a Feasibility Study." Vartanian Reply Aff. ¶ 7.

On March 26, 2019, Plaintiff filed this action on the basis of diversity jurisdiction, bringing one count for breach of contract and unjust enrichment. Defendant, thereafter, filed the present personal jurisdiction motion, under Federal Rule of Civil Procedure 12(b)(2), arguing that Defendant lacked the requisite "minimum contacts" with the state for this Court to exercise jurisdiction.

## II. <u>LEGAL STANDARD</u>

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *see Cerciello* v. *Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (noting that the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper.") (citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden,

the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id*. at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state

may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

## III. DISCUSSION

The present dispute concerns only whether this Court has specific jurisdiction over Defendant.[1] A plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) (citation omitted). In that connection, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the

---

[1] Although Defendant does not specifically move to dismiss on general jurisdiction grounds, there can be no serious argument that there is general jurisdiction over Dawah. In *Daimler v. AG Bauman*, the Supreme Court tightly cabined general jurisdiction for a corporation—besides in an "exceptional case"—to its "paradigm forum": "the place of incorporation and the principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014). Dawah is a Delaware corporation principally located in New York, and the allegations here fall well short of the type of "exceptional case" that the Supreme Court has suggested might give rise to general jurisdiction. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 447–448 (1952) (finding general jurisdiction in Ohio over Philippine company that was forced to halt its Philippine mining operations during World War II because of the Japanese occupation and, hence, was temporarily conducting all of its business from Ohio).

exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320).

The Third Circuit has explained that "there are different considerations in analyzing [specific] jurisdiction over contract claims." *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001). "In determining jurisdiction over a breach of contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Id.* (citing *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Relevant here, traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992). Moreover, physical presence in the forum is no longer determinative in light of modern commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Also, where a long-term relationship has been established, actual territorial presence becomes less determinative. *General Elec. Comp. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001). Finally, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Id.* at 150 (emphasis added).

In the present matter, Defendant maintains that it has no contacts whatsoever with the state of New Jersey. In that regard, Defendant contends that it has never sold any product, signed any documents, conducted negotiations, advertised, or maintained a sales website in New Jersey. It further asserts that the parties conducted all contract negotiations by telephone and email, and that it signed the at-issue contract, which provides for the application of New York law, while in

6

New York. Plaintiff disagrees with Defendant's characterization of its forum contacts, and provides a certification from Myers that attests that Dawah directed all of its emails, communications, and payments towards New Jersey, and high-level Dawah employees travelled to New Jersey on two separate occasions to attend meetings related to Plaintiff's ongoing performance under the contract.

In determining whether Defendant purposefully availed itself of New Jersey or possesses the requisite suit-related contacts with the state, the Third Circuit's decision in *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006) is particularly instructive. There, the plaintiff, a New Jersey company, sued a South African telecommunications company in New Jersey federal court to enforce an arbitral award related to a contract in which the South African company had agreed to provide customized telecommunications software for the plaintiff. *Id.* at 175-76. In ruling that the New Jersey court's exercise of specific jurisdiction over the South African company was appropriate, the Third Circuit relied on a number of factors. In that regard, the court noted that the parties had entered into an ongoing contract to exchange customized merchandise, and, hence, "the contract did not constitute the isolated interaction of a supplier putting an item into the stream of commerce to be fished out by a consumer," making the defendant's "lack of a physical presence in New Jersey…less determinative." *Id.* at 178 (citation omitted). The court also noted that, although the defendant had not signed the contract in New Jersey, the defendant's representatives visited New Jersey to participate in testing-related matters once problems arose in the contract, and reasoned that "[s]uch consultations, when they constitute a significant part of the business relationship, represent purposeful availment." *Id.* Also supporting the court's analysis was that "the breach of contract, *i.e.,* the failure to pay for

7

contractually compliant software, occurred when the payment was not placed in a New Jersey bank pursuant to the parties' course of dealings." *Id.*

Here, as in *Telcordia*, Defendant's suit-related contacts with New Jersey are sufficient to confer specific jurisdiction over it. As an initial matter, rather than arranging for an isolated purchase, the subject contract envisioned an ongoing relationship between the parties that necessitated Defendant's repeated electronic *and* physical forays into the state.[2] As the Supreme Court has put it, the "quality and nature" of such a relationship "can in no sense be viewed as random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 480 (finding specific jurisdiction in Florida based on long-term contract where the defendant never even travelled to Florida) (quotations omitted). Moreover, while Defendant maintains that it signed and executed the contract in New York, it does not dispute that its representatives travelled to New Jersey at various points after execution to attend meetings concerning issues related to the contract.[3] These meetings in the forum state, like the meetings in *Telcordia*, constituted "a significant part of the business relationship": in both instances, Defendant sent high level executives to New Jersey for formal meetings regarding Myers' sourcing and procurement services in connection with

---

[2] Because Defendant understood that Plaintiff is a New Jersey company that performs its work from its New Jersey address, it was foreseeable that Defendant would travel to New Jersey to conduct business in connection with the contract. Based on those contacts, which occurred here, Defendant "reasonably [should have] anticipate(d) being haled into" a New Jersey court. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

[3] That the contract contained a New York choice of law provision does not impact the analysis, as "choice of law provisions, without more, are not dispositive indications of personal jurisdiction." *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, No. 17-02905, 2017 WL 6539244, at *2 (D.N.J. Dec. 20, 2017) (citing *Burger King*, 471 U.S. at 480; *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984)). For the reasons stated herein, Defendant has failed to provide "more" than the choice of law provision and the fact that contract was executed in New York, which are insufficient to overcome Defendant's other contacts with New Jersey.

Defendant's pharmaceutical facility, the very essence of the business relationship between the parties as set out in the contract. In that regard, in the first meeting, Dawah representatives met with a contractor that Plaintiff, pursuant to the agreement, had procured to perform work on Defendant's pharmaceutical facility. And, even accepting Defendant's attempt to downplay the second meeting as a "status update," Dawah representatives, on their own volition, indisputably attended a face-to-face meeting with Myers to discuss the performance of his contractual duties. In fact, that at least one of these meetings occurred at Defendant's behest renders jurisdiction even more appropriate than in *Telcordia*¸ where, there, the defendant was only forced to travel to the state after problems arose in the contractual relationship. *See Telcordia*, 458 F.3d at 178. *See also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (finding specific jurisdiction because "coupled with the telephone calls and letters to New Jersey, the attendance at the [meeting in New Jersey] suffices to establish the minimum contacts necessary for specific jurisdiction").[4] Finally, as in *Telcordia*, Defendant directed all of its communications and payments to New Jersey, and the alleged breach of contract "occurred when the payment was not placed in a New Jersey bank pursuant to the parties' course of dealings." *Telcordia*, 458 F.3d at 178. Thus, the totality of the circumstances support New Jersey's exercise of specific jurisdiction over Defendant.[5]

---

[4] It should be noted that actually visiting the forum state is not the *sine qua non* of a finding of jurisdiction over a defendant. Indeed, in addition to the Supreme Court in *Burger King*, various lower courts have found that personal jurisdiction existed in breach of contract cases when the defendant never stepped foot in the forum state but otherwise purposefully directed its activities towards the forum state. *See, e.g., Trinity Packaging Supply, LLC v. Countrywide Pallet, Inc.*, No. 18-16115, 2019 WL 2611101, at *5 (D.N.J. June 26, 2019); *Coni-Seal, Inc. v. O'Reilly Auto., Inc.*, No. 12-04568, 2013 WL 149611, at *7 (D.N.J. Jan. 14, 2013).

[5] Defendant relies on two New Jersey state cases in which the courts declined to exercise jurisdiction. *See Baanyan Software Servs., Inc. v. Kuncha*, 433 N.J. Super. 466 (App. Div. 2013); *Pfundstein v. Omnicom Grp. Inc*., 285 N.J. Super. 245 (App. Div. 1995). However, in these

Having found that Defendant had sufficient minimum contacts with New Jersey to support the exercise of personal jurisdiction, the Court must analyze whether the exercise of personal jurisdiction in this case would be consonant with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 (1987) (requiring minimum contacts *and* fairness in order to assert personal jurisdiction); *Fiscus v. Combus Fin. AG*, No. 03-1328, 2006 WL 1722607, at *8 (D.N.J. June 20, 2006) (quoting *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir. 1990)). "A nonresident defendant who has been found to have minimum contacts with the forum 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 328 (1989) (quoting *Burger King,* 471 U.S. at 477). Factors to be considered include "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Asahi,* 480 U.S. at 113) (internal quotation marks omitted); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 483 (3d Cir. 1993).

In its briefing, Defendant does not specifically address the fair play and substantial justice requirement of personal jurisdiction. Nonetheless, the Court finds that exercising personal jurisdiction in this case would comport with traditional notions of fair play and substantial justice. Defendant is hard-pressed in arguing that travelling to New Jersey would be too

---

cases, the defendants never entered New Jersey, only communicating with the plaintiff by email and/or telephone. Even if courts can, in some instances, exercise jurisdiction without the defendant ever entering the forum state, in this case, Defendant indisputably entered New Jersey to discuss the contract, making its contacts with the state significantly more extensive than the defendants in *Baanyan* and *Pfundstein*.

10

inconvenient, as its principal place of business is New York, and various representatives have already travelled to New Jersey over the course of the contractual relationship. Moreover, "New Jersey has a decided interest in protecting residents from breaches of contract and subsequent economic harm," and "Plaintiff has a substantial interest in obtaining relief in New Jersey, given that Plaintiff feels the effects of any breach here." *Coni-Seal*, 2013 WL 149611, at *8.

Thus, Defendant purposefully availed itself of New Jersey, maintained significant suit-related contacts in New Jersey, and has failed to show how being hailed into court in New Jersey offends traditional notions of fair play and substantial justice. Exercising specific personal jurisdiction over Defendant is, therefore, appropriate.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, as this Court has personal jurisdiction over Defendant, Defendant's motion to dismiss is denied.

Dated: November 25, 2019 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge